UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

UNITED STATES OF AMERICA

   - against -

JOSE DE JESUS LEON NINO,

   Defendant.
------------------------------------------------------- X

`USDC SDNY`
`DOCUMENT`
`ELECTRONICALLY FILED`
`DOC #:`
`DATE FILED: 8/7/15`

OPINION AND ORDER

08-cr-1003 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I. INTRODUCTION AND BACKGROUND

In August 2010, Jose de Jesus Leon Nino pleaded guilty to two narcotics offenses — conspiracy to import and distribute heroin, and conspiracy to distribute and possess with intent to distribute heroin.[1] On January 31, 2011, Nino was sentenced before this Court to a period of one hundred months in prison (concurrently), followed by three years of supervised release.[2] In the course of rendering Nino's sentence, the Court took notice — and instructed the Bureau of Prisons ("BOP") to take notice — that Nino spent approximately thirteen months

---

[1] *See* Judgment (Dkt. No. 58) at 1.

[2] *See id.* at 2-3.

incarcerated in Colombia before being extradited to the United States.[3] At sentencing, the Government indicated (1) that it thought Nino's thirteen months in Colombian prison should be credited against his sentence,[4] and (2) that BOP was required to do so.[5] Accordingly, the Court declined to subtract thirteen months from Nino's sentence — relying on its understanding, from the Government, that the BOP would apply the credit.

On November 1, 2014, Amendment 782 to the Sentencing Guidelines went into effect.[6] The Amendment provides for a two-level reduction in the baseline offense level for certain kinds of narcotics crimes, including the two offenses for which Nino is currently serving time. Because the Amendment applies retroactively,[7] Nino is eligible for a sentence reduction, from level 31 (the original baseline in 2011) to level 29. Practically, this means that the Court has the

---

[3]     *See id.* at 2.

[4]     Government's Sentencing Memorandum (Dkt. No. 55) at 3 ("[I]t is [our] understanding that the BOP should in fact award a credit for the approximately 13 months that the defendant spent in Colombian custody.").

[5]     *Id.* at 4 ("[T]he BOP is required by statute to credit the defendant's approximately 13 months' imprisonment in Colombia, and any similar credit applied by the Court will result in a double-counting of the defendant's time in Colombia custody.").

[6]     *See* U.S.S.G. supplement to app. C amends. 782 and 788.

[7]     *See* U.S.S.G. supplement to app. C amend. 788 (explaining that Amendment 788, *inter alia*, makes Amendment 782 applicable retroactively).

discretion to reduce Nino's sentence by up to thirteen months — *i.e.*, to shorten his overall sentence from one hundred months to eighty-seven months.[8]

The Sentencing Commission, concerned about the administrative difficulties posed by Amendment 782, has promulgated a special instruction ("Special Instruction") setting forth a year-long holdover before the two-level reduction takes effect.[9] Specifically, the Special Instruction provides that "[t]he court shall not order a reduced term of imprisonment based on Amendment 782 unless the effective date of the court's order is November 1, 2015, or later."[10]

In most cases, the holdover period — from November 1, 2014 to November 1, 2015 — will not affect a prisoner's ultimate release date, because most sentences will run past November 1, 2015, even after consideration of Amendment 782. In a small number of cases, however, the holdover period has

---

[8] It is purely coincidental that thirteen months is both (1) the period of time by which Nino's sentence may be reduced pursuant to the Amendment 782 reduction, and (2) the period of time that Nino spent incarcerated in Colombia before extradition.

[9] *See* U.S.S.G. supplement to app. C. amend. 788 ("The number of cases potentially involved is large, and the magnitude of the change in the guideline range is significant. The Commission determined that an estimated 46,000 offenders may benefit from retroactive application of Amendment 782 . . . and the average sentence reduction would be approximately 18 percent. . . . [Therefore] a one-year delay in the effective date of any order granting sentence reductions under Amendment 782 [is required].").

[10] U.S.S.G. § 1B1.10(e).

the potential to delay a prisoner's ultimate release date, because (1) the two-level reduction could result (either by necessity or at the court's discretion) in a sentence that expires *before* November 1, 2015, but (2) the Special Instruction will preclude the court from ordering the prisoner released until that date.

Nino's is such a case. Once his sentence is retroactively shortened from one hundred months to eighty-seven months (pursuant to Amendment 782), and once (1) the thirteenth months he spent imprisoned in Colombia before being extradited, and (2) the approximately nine months of good time credits he has received to date,[11] are credited toward his eighty-seven month sentence, Nino's release date will be some time toward the beginning of August 2015. Simply put, in Nino's case, adhering to the Special Instruction — which plainly prohibits the Court from ordering his release until November 1, 2015 — will result in Nino spending an extra three months or so in federal custody. The question is whether that outcome is consistent with the Fifth Amendment's guarantee of Due Process.

The Government argues that the answer is yes, because Nino has no *right* to have his sentence reduced. Rather, the decision to afford Nino (and other defendants like him) retroactive leniency was an "act of lenity" on the part of

---

[11] *See* Progress Report, Exhibit to Government's Supplemental Presentence Report, at 1 (indicating that Nino had accrued 270 days' worth of good time credit as of October 15, 2014).

Congress — which means that the Sentencing Commission has the power to decide when and how modified sentences are imposed.[12] Defendants "do not have a constitutional right to [be resentenced] *at all*, much less to [be resentenced] on any particular terms."[13] Because Nino effectively asks this Court to hold that he has a right to be resentenced before November 1, 2015, the relief he seeks is foreclosed — because the Sentencing Commission has foreclosed it.

For the reasons set forth below, the Government's argument must be rejected because it rests on an untenably broad interpretation of *Dillon v. United States*, the controlling Supreme Court case on resentencing. Nonetheless, because this Court may select the date of Nino's resentencing, I elect — on avoidance grounds[14] — to resentence Nino on November 2, 2015.

## II. APPLICABLE LAW

---

[12] *See* 28 U.S.C § 994(u) ("If the [Sentencing] Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses, it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced.").

[13] Memorandum of Law In Opposition to Reducing Defendant's Sentence Before November 1, 2015 ("Opp. Mem.") at 18.

[14] *See Pearson v. Callahan*, 555 U.S. 223, 234 (2009) ("[P]rinciples of judicial restraint caution [courts] to avoid reaching constitutional questions when they are unnecessary to the disposition of a case.") (internal citations omitted); *Scott v. Harris*, 550 U.S. 372, 377 (2007) (discussing the "[judicial] policy of avoiding unnecessary adjudication of constitutional issues").

In *United States v. Booker*,[15] the Supreme Court held the Sentencing Reform Act of 1984 unconstitutional to the extent that it made guidelines issued by the Sentencing Commission binding on the judiciary. According to the Court, giving binding weight to sentencing guidelines would, in practice, allow for judicial findings of fact that "increase[] the [] guidelines range . . . . [in a manner that] impose[s] a sentence greater than that supported by the facts established by the jury verdict or the guilty plea."[16] Because that outcome would "violate[] the Sixth Amendment right of criminal defendants to be tried by a jury and to have every element of an offense proved by the Government beyond a reasonable doubt,"[17] the Court determined that guidelines issued by the Sentencing Commission must be treated as advisory, not mandatory.[18]

Five years later, in *Dillon v. United States*, the Court declined to extend the core holding of *Booker* to resentencing proceedings. Reasoning that the

---

[15]   *See* 543 U.S. 220 (2005).

[16]   *Dillon v. United States*, 560 U.S. 817, 819 (2010). *Accord Booker*, 543 U.S. at 235-36.

[17]   *Dillon*, 560 U.S. at 819.

[18]   *See Booker*, 543 U.S. at 233 (explaining that the constitutionality of the sentencing guidelines turns on whether they can be "read as merely advisory provisions that recommend[], rather than require[], the selection of particular sentences in response to differing sets of facts").

ex post *reduction* of a sentence is fundamentally different from the initial *imposition* of a sentence,[19] the Court held that "[resentencing] proceedings [] do not implicate the interests identified in *Booker* . . . [because there is] no constitutional requirement of retroactivity that entitles defendants sentenced to a term of imprisonment to the benefit of subsequent [] amendments [to the sentencing guidelines]."[20]  "Rather," the Court continued, the retroactive reduction of a defendant's sentence is "a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the [guidelines]."[21]  In short, it is a matter of privilege, not a matter of right — and it is therefore the Sentencing Commission, not the sentencing court, that "determines in what circumstances and by what amount the sentences of prisoners affected by guidelines amendments may be reduced."[22]

## III.   DISCUSSION

Broad principles govern this case.  *First*, it is plainly unconstitutional for a defendant's incarceration to continue after the custodial portion of his

---

[19]   *See* 18 U.S.C. § 3582(c) (courts generally "may not modify a term of imprisonment once it has been imposed").

[20]   *Dillon*, 560 U.S. at 828.

[21]   *Id.*

[22]   *Id.* at 830 (citations omitted).

judicially-imposed sentence has run its course[23] — which would happen here if Nino's resentencing takes effect before November 1, 2015. *Second*, when the sentencing guidelines are modified to retroactively lessen sentences currently being served, the Sentencing Commission has the authority to decide "in what circumstances and by what amount" prisoners' sentences are to be reduced.

In Nino's case, these principles conflict. Which principle should prevail turns on the scope of *Dillon*. The Government urges an expansive reading. In essence, it believes that *Dillon* drew a categorical distinction between sentencing and resentencing — where the former is exclusively the province of courts (informed by the factual findings of juries or the facts set forth in plea agreements), the latter, because it is an "act of lenity," is left to the discretion of the Sentencing Commission. Here, the Sentencing Commission decided that no resentencing pursuant to Amendment 782 may take effect until November 1, 2015. For the Government, that is the end of the matter. Like *Dillon*, this case involves "[a] restriction" — imposed by the Sentencing Commission — "on a judge's [] resentencing discretion." And like the defendant in *Dillon*, therefore, Nino "ha[s] [no] constitutional right [to be resentenced]," much less to be resentenced "on [the]

---

[23] *Cf. Earley v. Murray*, 451 F.3d 71, 75 (2d Cir. 2006) ("The judgment of the court establishes a defendant's sentence, and that sentence may not be increased by an administrator's amendment.").

particular terms" of his or the court's choosing.[24]

The Government's argument proves too much. Under its logic, the Sentencing Commission could, for example, issue a special instruction limiting the applicability of a retroactive sentence reduction to prisoners over a certain age — or a special instruction permitting judges to reduce the sentences of female prisoners but not male prisoners. The point, of course, is not that these hypotheticals would ever occur. The point is that these hypotheticals are quite obviously unconstitutional, but the Government's argument would still permit them. Because criminal defendants have no constitutional right to be resentenced, the Government believes it follows, *a fortiori*, that defendants have no right to object, on constitutional grounds, to any aspect of the resentencing process.

I decline to read *Dillon* so broadly. *Dillon* does not stand for the sweeping proposition that resentencing is immune from all constitutional scrutiny. Rather, it stands for the considerably more modest proposition that the specific Sixth Amendment concerns raised by mandatory guidelines when determining the length of a sentence do not exist when determining the length by which a previously-imposed sentence should be reduced. In so holding, the *Dillon* Court had no occasion to consider — much less to resolve — the myriad constitutional

---

[24] Opp. Mem. at 18.

problems that might arise in connection with aspects of resentencing *other than* determining the length by which a previously-imposed sentence should be reduced. One such problem — the potential problem here — is that resentencing rules would require a defendant to remain in custody after his sentence is complete, solely on the ground of administrative convenience.

I therefore have little difficulty concluding that if the Sentencing Commission were to promulgate resentencing rules that, in practice, cause incarceration to continue after the completion of a judicially-imposed sentence, that outcome would be constitutionally unacceptable. Whatever else might be said of our sentencing law, "[o]nly a judgment of a court, as expressed through the sentence imposed by a judge, has the power to constrain a person's liberty."[25] Put simply, *Dillon* cannot and does not bestow limitless power on the Sentencing Commission to fashion procedures for resentencing.[26] It grants the Sentencing

---

[25] *Earley*, 451 F.3d at 75.

[26] In this respect, I agree with Judge Jack B. Weinstein of the Eastern District of New York that courts that have held U.S.S.G. 1B1.10(e) binding on judges *as such*, no matter its constitutional impact, "have done so based on . . . a questionable" — and ultimately unpersuasive — "application of the Supreme Court's decision in *Dillon*." *Alli-Balogun v. United States*, No. 92 Cr. 1108, 2015 WL 4273786, at *1 (E.D.N.Y. July 15, 2015). *But see United States v. Vergara*, No. 10 Cr. 113, 2015 WL 867613, at *2 (M.D. Fla. Mar. 2, 2015) (citing *Dillon* for the proposition that because "[resentencing] respresent[s] a congressional act of lenity . . . the scope of judicial discretion with respect to a sentence is subject to congressional control").

Commission the expansive authority to control resentencing — but only in a manner consistent with the requirements of due process and equal protection.

In this particular context, however, I find that the Sentencing Commision has *not* promulgated rules that could cause incarceration to continue after the completion of a judicially-imposed sentence. Although there is no dispute that Nino qualifies for a two-level reduction under Amendment 782, he has no right to be resentenced before November 1, 2015. Because I have the discretion to decide when to resentence Nino, I also have the discretion to decide when his reduced sentence takes effect. If it takes effect after November 1, 2015, the constitutional issue posed by section 1B.10(e) will evaporate. With that in mind — and heeding general principles of avoidance — Nino's resentencing is deferred until November 2, 2015 at 4:30 PM.[27]

## IV. CONCLUSION

For the foregoing reasons, Nino's motion for a reduction of sentence pursuant to Amendment 782 will be decided on November 2, 2015.

---

[27] It also bears noting that because Nino's offense is an aggravated felony, it qualifies him for removal under the immigration laws — which means that immediately upon his release from criminal custody, Nino will be transferred to immigration detention. Although there is certainly a constitutional difference between criminal custody and immigration custody, at a practical level, the imminence of immigration custody attenuates the due process concerns in Nino's case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         August 7, 2015

- Appearances -

**For Defendant Jose de Jesus Leon Nino:**

Guy Oksenhendler, Esq.
Law Offices of Guy Oksenhendler
419 Park Avenue South, Second Floor
New York, NY 10016
(212) 213-4666

**Amicus Curiae in Support of Defendant:**

Jennifer L. Brown, Esq.
Federal Defenders of New York Inc. (NYC)
52 Duane Street, 10th floor
New York, NY 10007
(212) 417-8700

**For the Government:**

Michael Levy
Marshall A. Camp
Andrew D. Beaty
Benjamin Naftalis
Zachary Feingold
Assistant U.S. Attorneys
One Saint Andrew's Plaza
New York, NY 10007
(212) 637-2200